UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JEROME RIDDICK,   Plaintiff, | :  :  : |
| v. | :   Case No. 3:17cv120(SRU) |
| COMMISSIONER SCOTT SEMPLE, *et al.*,   Defendants. | :  :  : |

## **INITIAL REVIEW ORDER**

The plaintiff, Jerome Riddick, a/k/a Ja-Qure Al-Bukhari, is incarcerated at the Northern Correctional Institution. He initiated this action by filing a complaint under 42 U.S.C. § 1983 against Commissioner Scott Semple, Wardens Henry Falcone, William Mulligan, and Edward Maldonado, Deputy Warden Derrick Molden, and District Administrator Angel Quiros. He has filed two motions for leave to amend the complaint. For the reasons set forth below, the first motion for leave to amend is granted, the second motion for leave to amend is denied as moot, and the amended complaint is dismissed without prejudice to filing an amended retaliation claim within 30 days of this Order.

### I.  Motions for Leave to Amend [ECF Nos. 11, 12]

Riddick seeks leave to file an amended complaint to add a new claim against the defendants. Federal Rule of Civil Procedure 15(a)(1) provides that a plaintiff may amend his complaint once as of right "within: . . . (B) 21 days after service of a responsive pleading or 21 days after service of a motion" to dismiss, a motion for a more definite statement or a motion to strike, "whichever is earlier." Because the defendants have not filed an answer or motion

1

addressed to the complaint, Riddick may amend as of right.

Because both motions to amend and the proposed amended complaints are essentially identical, I **grant** the first motion for leave to amend and **deny** the second motion for leave to amend as moot. The Clerk shall docket the amended complaint and its exhibits attached to the first motion for leave to amend, ECF No. 11, as the Amended Complaint.

## II. Amended Complaint

Under section 1915A of Title 28 of the United States Code, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous, malicious, or fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90. 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

### A. Grievance Restriction Claim

The allegations to which this Initial Review Order refers are drawn from the Amended Complaint and supporting exhibits. *See* ECF No. 11, Attach. A & Exs. 1–3.

On December 17, 2014, Warden Falcone placed Riddick on grievance restriction for six months until June 17, 2015 because he had violated Department of Correction Administrative Directive 9.6(6)(O) by filing more than seven grievances during a sixty-day calendar period. Warden Falcone informed Riddick that he could appeal the grievance restriction to the District Administrator.

On August 11, 2015, Warden Falcone again placed Riddick on grievance restriction for six months until January 8, 2016 because he had violated Department of Correction Administrative Directive 9.6(6)(O) by filing more than seven grievances during a sixty-day calendar period. During the six-month period that Riddick was on grievance restriction, he could file one grievance per month. Warden Falcone made Riddick aware that he could appeal the imposition of the grievance restriction to the District Administrator

On April 25, 2016, Warden Maldonado placed Riddick on grievance restriction for six months until October 25, 2016 because he had violated Department of Correction Administrative Directive 9.6(6)(O) by filing more than seven grievances during a sixty-day calendar period. During the six-month period that Riddick was on grievance restriction, he could file one grievance per month. Warden Mulligan made Riddick aware that he could appeal the imposition of the grievance restriction to the District Administrator.

On May 23, 2016, Riddick appealed the imposition of the grievance restriction. District Administrator Quiros denied the appeal as untimely because it was filed more than fifteen days after Warden Maldonado had imposed the grievance restriction.

On June 16, 2016, Warden Maldonado extended the grievance restriction against Riddick for an additional six months until April 25, 2017 because Riddick had failed to comply with the restrictions imposed on April 25, 2017. Riddick had filed four grievances in a three-month period. Riddick generally alleges that defendants Wardens Falcone, Mulligan and Maldonado, Deputy Warden Molden, and District Administrator Angel Quiros kept him on grievance restriction for prolonged periods of time.

Riddick claims that the grievance restrictions imposed on him by Wardens Falcone, Mulligan and Maldonado, Deputy Warden Molden, and District Administrator Angel Quiros violated his First Amendment right to redress of grievances. It is well established that prisoners retain the First Amendment right to petition the government for the redress of grievances. *See* U.S. Const. amend. I ("Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for a redress of grievances."). That right encompasses the right of access to the courts. *See BE & K Const. Co. v. N.L.R.B.*, 536 U.S. 516, 525 (2002) ("We [have] made explicit that the right to petition extends to all departments of the Government, and that the right of access to the courts is but one aspect of the right of petition.") (internal quotation marks and citation omitted).

The Supreme Court, however, has never held that the Constitution requires state correctional facilities to adopt or implement formal grievance procedures, or that prisoners be given access to the grievance procedures. *See Swift v. Tweddell*, 582 F. Supp. 2d 437, 445–46 (W.D.N.Y. 2008) ("It is well established . . . that inmate grievances procedures are undertaken voluntarily by the states, that they are not constitutionally required, and accordingly that a failure to process, investigate or respond to a prisoner's grievances does not in itself give rise to a

4

constitutional claim.") (collecting cases). Thus, a prison official's imposition of restrictions on an inmate's access to grievance procedures or his or her alleged failure to respond to, properly address, or timely process an inmate's grievances also does not violate the inmate's constitutionally or federally-protected rights. *See Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003) ("Although state laws may in certain circumstances create a constitutionally protected entitlement to substantive liberty interests, state statutes do not create federally protected due process entitlements to specific state-mandated procedures.") (internal citations omitted).

Furthermore, if a prison official either deprives an inmate of access to the grievance system or refuses to process a grievance, the inmate is not precluded from directly petitioning the government for redress of that claim through a lawsuit in court. *See Lopez v. McGill*, 2009 WL 179787, at *5 (D. Conn. Jan. 21, 2009) (holding that because the Prison Litigation Reform Act requires inmates to exhaust only such administrative remedies as "are available," 42 U.S.C. § 1997e(a), an inmate is not required by the Act to exhaust those remedies that have been made unavailable by a grievance restriction). In fact, Riddick has availed himself of his right of access to the courts on a regular basis during the periods of time when he was placed on grievance restriction status by filing nine lawsuits in this court, including this case.[1] Accordingly, Riddick's claim that the grievance restrictions imposed by Wardens Falcone, Mulligan and Maldonado, Deputy Warden Molden, and District Administrator Angel Quiros directly limited his First

---

[1] *See Al-Bukhari v. Semple*, Case No 3:15cv322(SRU) (filed Mar. 4, 2015); *Al-Bukhari v. Semple*, Case No 3:15cv322(SRU) (filed Mar. 4, 2015); *Al-Bukhari v. Connecticut*, Case No 3:15cv528(SRU) (filed Apr. 10, 2015); *Al-Bukhari v. Correction*, Case No 3:16cv53(SRU) (filed Jan. 13, 2016); *Al-Bukhari v. Semple*, Case No 3:15cv1267(SRU) (filed July 27, 2016); *Al-Bukhari v. Semple*, Case No 3:16cv1428(SRU) (filed Aug. 19, 2016); *Riddick v. Semple*, Case No 3:16cv1769(SRU) (filed Oct. 26, 2016); *Riddick v. Maurer*, Case No 3:16cv2009(SRU) (filed Dec. 12, 2016); *Riddick v. Semple*, Case No 3:17cv120(SRU) (filed Jan. 25, 2017); *Riddick v. Semple*, Case No 3:17cv134(SRU) (filed Jan. 30, 2017).

Amendment right to petition the government for redress of grievances lacks an arguable legal or factual basis and is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### B. Department of Correction Lost Property Board Fee

Riddick alleges that on one occasion in May 2016 and one occasion in August 2016, he sought relief for lost or damaged property by filing a claim with the Department of Correction's Lost Property Board. Riddick claims that the property board failed to adequately investigate his claims and denied his claims "for no reason." Am. Compl. at 3. Riddick also challenges Administrative Directive 9.6(16)(D), which requires an inmate to pay a $25.00 processing fee for each claim filed with the Lost Property Board.[2] He alleges that Commissioner Semple was responsible for promulgating and enforcing this provision of Administrative Directive 9.6(16) and complains that the required processing fee deprives him of his right to seek redress of grievances with regard to property losses.

The Supreme Court has held that the Due Process Clause of the Fourteenth Amendment is not violated when a prison inmate loses personal belongings due to the negligent or intentional actions of correctional officers if the state provides an adequate post-deprivation compensatory remedy. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 543 (1981). The State of Connecticut provides an adequate remedy for the kind of deprivation Riddick alleges in Department of Correction Administrative Directives and under Connecticut statutes: Administrative Directive 9.6(16) and subsection (F) provide that the Department of

---

[2] State of Connecticut Department of Correction Administrative Directive 9.6, in effect as of August 15, 2013, may be found at: http://www.ct.gov/doc/LIB/doc/PDF/AD/ad0906.pdf (last visited Apr. 7, 2017).

Correction's "Lost Property Board shall hear and determine any claim by an inmate in a correctional facility who seeks compensation not exceeding . . . ($3,500.00) for lost or damaged personal property" and that an inmate may pursue his property claim with the Connecticut Claims Commissioner if the Board denies the claim completely or in part. *See also* Conn. Gen. Stat. § 4-141 *et seq*. Those state remedies are not rendered inadequate simply because Riddick anticipates a more favorable remedy under the federal system or because it may take a longer time under the state system before his case is resolved. *See Hudson*, 468 U.S. at 535.

Although Riddick may have been unsuccessful in obtaining monetary reimbursement for his lost or damaged personal property through the Lost Property Board, he does not indicate that he also pursued his available remedy through the Office of the Claims Commissioner. Thus, Riddick has not alleged that the State of Connecticut's procedures for processing property claims are inadequate. *See Edwards v. Erfe*, 588 F. App'x 79, 81 (2d Cir. 2015) (affirming dismissal of inmate's deprivation of property claim on the ground that the inmate had not alleged that process provided by the State of Connecticut, including the opportunity to seek relief through the Office of the Claims Commissioner, was inadequate).

With regard to Riddick's challenge to the $25.00 processing fee as a deprivation of right to redress grievances regarding property losses, Administrative Directive 9.6(16)(D) provides that the $25.00 filing fee "may be waived for good cause by the Department's Claims Office." Furthermore, if the inmate does not have enough funds to pay the entire filing fee, he may file an Application for Deferment of Filing Fee, the grant of which may allow the fee to be waived entirely or deducted from the inmate's prisoner account over time. *Id.* Thus, it is apparent that if an inmate does not have enough money to pay the $25.00 filing fee at the time he seeks to file a

7

claim with the Lost Property Board, he is not precluded from filing the claim.

Riddick has not demonstrated that the fee provision as described in Administrative Directive 9.6(16)(D) will result in a denial of access to the procedures or the remedy available for an inmate's lost or damaged property. The First Amendment redress of grievances claim as it relates to the filing fee provision of Administrative Directive 9.6(16) is accordingly dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### C. Retaliation Claim

Riddick suggests that the Lost Property Board has denied his past requests for monetary reimbursement for his items of lost or damaged property because he has had "many issues with staff" and "always file[s] lawsuits." Am. Compl. at 7. The court construes that allegation as a claim that unknown Lost Property Board Members have retaliated against him for filing lawsuits and making complaints by denying his requests for reimbursement for lost or damaged property. Aside from the fact that Riddick did not name as a defendant any individual who has been responsible for denying his requests for reimbursement for lost/damaged property, the allegations do not state a plausible retaliation claim.

When prison officials take adverse action against an inmate, motivated by the inmate's exercise of a protected constitutional right, a section 1983 retaliation claim may be sustained. *See Friedl v. City of N.Y.*, 210 F.3d 79, 85 (2d Cir. 2000) ("In general, a section 1983 claim will lie where the government takes negative action against an individual because of his exercise of rights guaranteed by the Constitution or federal laws."). Because claims of retaliation are easily fabricated, however, the courts consider such claims with skepticism and require that they be

8

supported by specific facts; merely conclusory allegations are not sufficient. *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).

To state a retaliation claim, a plaintiff must plausibly allege that (1) his conduct or speech was protected by the Constitution or federal law; (2) prison officials took adverse action against him; and (3) the protected conduct or speech was a substantial or motivating factor in the alleged retaliatory or adverse action by prison officials. *See Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (citations and internal quotation marks omitted).

It is well-established that the filing of a lawsuit by an inmate constitutes conduct protected by the First Amendment. *See Colon v. Coughlin, 58 F.3d 865, 872* (2d Cir. 1995). Riddick's claim that the conduct of the unidentified Lost Property Board Members constituted retaliation, however, is conclusory. There are no facts to suggest that his filing of lawsuits was the motivating factor in the decisions by Lost Property Board officials to deny his property claims. Thus, the allegations of retaliatory conduct are dismissed as failing to state a plausible claim upon which relief may be granted; the dismissal is without prejudice to refiling within thirty days of this Order. *See* 28 U.S.C. § 1915A(b)(1).

## ORDERS

It is hereby ordered that:

(1)     The Motion for Leave to Amend [**ECF No. 11**] is **GRANTED**. **The Clerk is directed to docket the Amended Complaint, including its exhibits, which is attached to motion to amend [ECF No. 11].** The Motion for Leave to Amend [**ECF No. 12**] is **DENIED** as moot. The First and Fourteenth Amendments claims in the Amended Complaint are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1). Thus, all of the federal claims against the

defendants as set forth in the Amended Complaint have been **DISMISSED**. Riddick may have **30 days** from the date of this Order to file a further amended complaint regarding his retaliation claim; however, the court will decline to exercise supplemental jurisdiction over the remaining state law claims and the case will be dismissed if no adequate complaint is filed. *See* 28 U.S.C. § 1367(c)(3); *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 117–18 (2d Cir. 2013).

(2)  The docket reflects that Riddick has filed a "Memorandum of Law in Support of Plaintiff's TRO," ECF No. 14 and an "Order to Show Cause and Temporary Restraining Order," ECF No. 13. Although Riddick did not file a motion for temporary restraining order, the court liberally construes the memorandum as a motion seeking a temporary restraining order.

The memorandum and motion for an order to show cause seek a court order restraining the defendants from restricting Riddick's use of the Department of Correction's administrative remedy program and petitioning the government for redress of grievances. The memorandum includes an allegation that prison officials have restricted him from filing grievances until April 25, 2017. Because the court has dismissed the current amended complaint and the relief requested in the order to show cause and memorandum is now moot, the Order to Show Cause [**ECF No. 13**] and the Memorandum, [**ECF No. 14**], which the court has construed as a motion for temporary restraining order are **DENIED**.

SO ORDERED at Bridgeport, Connecticut this 17th day of May 2017.

　　　　　　　　　　　　　　　　　　__/s/ Stefan R. Underhill_____
　　　　　　　　　　　　　　　　　　STEFAN R. UNDERHILL
　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE